UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

_____

| | |
|---|---|
| **WILLIAM R. HIBLE,** ) | |
| ) | |
| Petitioner, ) | |
| v. ) | Case No. 14-CV-2028 |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Respondent. ) | |

## OPINION

On February 20, 2014, Petitioner William R. Hible filed this Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (#1). The government filed its Response (#3) on March 21, 2014. For the following reasons, Petitioner's Motion (#1) is DENIED.

BACKGROUND

The following background facts are taken from the Seventh Circuit opinion adjudicating Petitioner's direct appeal (*United States v. Hible*, 700 F.3d 958 (7th Cir. 2012)):

Petitioner was charged in a three-count indictment with criminal drug conspiracy involving the distribution of cocaine and crack cocaine from May 2008 through February 2010 (Count 1) and with the distribution of cocaine in October 2009 (Count 2) and the distribution of crack cocaine in December 2009 (Count 3) in violation of 21 U.S.C. §§ 841 and 846. In June 2010, the government filed notice pursuant to 21 U.S.C. § 851 that it would seek an enhanced sentence due to Petitioner's prior felony drug conviction. The law in effect at the time had a mandatory minimum penalty of 10 years' imprisonment and a maximum penalty of life imprisonment for a defendant who distributed 5 grams or more of crack cocaine and had a prior felony drug conviction. See 21 U.S.C. § 841(b)(1)(B)(iii) (2006).

On January 12, 2011, Magistrate Judge David G. Bernthal held a change of plea hearing. The government stated its intent to dismiss Counts 1 and 2 at sentencing, and Petitioner pleaded guilty to Count 3, charging him with distributing 5 grams or more of crack cocaine. Judge Bernthal advised Petitioner of the potential penalties and asked him if he had any questions about them. Petitioner asserted that he should be sentenced under the new law, the Fair Sentencing Act of 2010. The FSA increased the threshold amount of crack cocaine for certain penalties and as a result lowered the penalty for offenses involving crack. Under the FSA, a defendant who distributed 12.8 grams of crack and had a prior felony drug conviction faced no mandatory minimum term of imprisonment and a maximum term of imprisonment of not more than 30 years. See 21 U.S.C. § 841(b)(1)(B)(iii), (C) (2006 & Supp.IV).

Judge Bernthal said he did not know the sentencing judge's position on the applicability of the FSA to defendants such as Petitioner who committed an offense prior to the change in law but who would be sentenced afterwards, but advised Petitioner that he could appeal the decision to sentence him under the "old law," if that was the judge's decision. The government stated that the Seventh Circuit had rejected Petitioner's argument that the FSA applied to offense conduct occurring before the FSA's enactment on August 3, 2010 (presumably referring to *United States v. Bell*, 624 F.3d 803, 814-15 (7th Cir. 2010)), but noted that the defendant would preserve the right to make that argument. Petitioner agreed to the factual basis for his plea, including that on December 3, 2009, he sold 12.8 grams of crack to an informant. Petitioner pled guilty to the charge of distributing 5 grams or more of crack cocaine. Judge Bernthal found that there was a factual basis for the plea, that the plea was voluntary and knowing, and that Petitioner was guilty as charged in Count 3.

A presentence report (PSR) was prepared prior to sentencing. The report calculated Petitioner's base offense level under the drug quantity guideline, U.S.S.G. § 2D1.1, resulting in a base offense level of 36, based in part on relevant conduct, and after adjustments, a total offense level of 39. The report also calculated Petitioner's offense level under the career offender guideline, § 4B1.1, assuming the FSA did not apply, which resulted in a career offender level of 37, and after adjustments a total offense level of 34. If the FSA applied, however, the career offender guideline total offense level would have been 31. Petitioner had nine criminal history points, which put him in a category IV. But under the career offender guideline, every offender is in category VI.

Using the drug quantity guideline, offense level 39 and criminal history category VI, Petitioner's advisory guideline range was 360 months to life. Under the career offender guideline, offense level 34 and criminal history category VI, the advisory guideline range was 262 to 327 months. The recommended offense level was the higher of the two levels, that is, the one under the drug quantity guideline (39). See U.S.S.G. § 4B1.1(b) ("[I]f the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply."). Thus, the PSR recommended a guideline range of 360 months to life.

Prior to sentencing, Petitioner objected to the paragraphs of the PSR detailing his relevant conduct[1], which greatly increased the drug quantity for which Petitioner could be held accountable. His objections did not mention the FSA. In response to the objections, the government said that it

---

[1]The relevant conduct included multiple confidential sources detailing Petitioner's extensive drug dealing operations in Danville, Illinois. The relevant conduct included multiple deals involving large amounts of marijuana, crack, and powder cocaine. The relevant conduct also included weapons possession.

3

"believed ... a sentence that is sufficient but not greater than necessary to achieve the sentencing purposes of Section 3553(a) can be found within the advisory career offender range" of 262 to 327 months of imprisonment. Although the government agreed with the PSR's relevant conduct findings, it said that a ruling on Petitioner's relevant conduct objections was unnecessary.

At sentencing on July 7, 2011, this court said that it had reviewed the PSR and noted that there were objections that "boiled down to" what the advisory guideline range should be. The court noted that the PSR recommended an offense level of 39, criminal history category VI, and an advisory guideline range of 360 months to life. The court confirmed that Petitioner had "no objection to the career offender [guideline], which would put [his] advisory guideline range at 262 to 327" months. The court also confirmed that the government and probation had no objection to using the career offender advisory guideline range of 262 to 327 months as "our starting point." Then the court asked defense counsel, "So ... if I agree that our starting point is the career offender advisory guideline range of 262 to 327[,]... would that mean there would be no objections to the presentence report?" Counsel answered "That's correct" and the government and probation officer stated that they had no objection to that "starting point." The court said that "the career offender advisory guideline range would start at offense level 34," after factoring acceptance of responsibility, and both the government and Petitioner's counsel agreed. Accordingly, the court found that "the starting point in this case under the advisory guidelines, by agreement of counsel and probation, is that this is an offense level 34/criminal history category VI and that the advisory guideline range is 262 to 327."

The court reconfirmed with Petitioner, through counsel and with Petitioner directly, that he withdrew his objections "with the agreement that the court start at the offense level 34/criminal

4

history category VI/advisory guideline range 262 to 327, instead of 360 to life." The court found that "all objections have been withdrawn" and "the parties agree that [Petitioner] is a career offender, ... is a criminal history category VI, and ... has an advisory guideline range of 262 to 327 months because he is an offense level 34 as adjusted." Then, the court adopted the PSR's findings, as amended by the parties' agreement.

Petitioner offered mitigation evidence, which included evidence to mitigate his career offender status- testimony that although he was convicted of a crime of violence occurring in 2005, he did not actually commit the crime, but pled guilty for other reasons. The government requested a within-guideline sentence of 25 years (300 months). Petitioner's attorney recommended a below-guideline sentence of 15 years (180 months). This court gave Petitioner a "final break" and considered him to have a criminal history category IV, which provided an advisory guideline range of 210 to 262 months. The court determined that the appropriate and reasonable sentence was 240 months. *Hible*, 700 F.3d at 959-61.

*The Seventh Circuit's Ruling on Direct Appeal*

On direct appeal, Petitioner argued that he should have been sentenced consistent with the more lenient penalties under the FSA, and that he preserved the issue for appeal by objecting, at his plea hearing, to being sentenced under the old law. *Hible*, 700 F.3d at 961. The Seventh Circuit rejected Petitioner's argument, finding that Petitioner had waived the right to argue that he should have been sentenced under the FSA. *Hible*, 700 F.3d at 961. The court noted that Petitioner clearly knew of the FSA, yet at his sentencing affirmatively withdrew all objections to the PSR and agreed that this court should use, as a "starting point," an offense level of 34, criminal history category VI, and the career offender advisory guideline range of 262 to 327 months, which the court of appeals

5

found to be a "conscious, strategic decision" on Petitioner's part. *Hible*, 700 F.3d at 962. The court noted the following:

> "By agreeing to the career offender guideline range, [Petitioner] avoided a hearing on relevant conduct and the potentially higher offense level calculated under the drug quantity guideline based on that relevant conduct. He also argued for mitigation of his career offender status. [Petitioner] had little to gain in arguing for application of the FSA with no mandatory minimum and a maximum sentence of 30 years when he faced an advisory guideline range of 360 months to life and his counsel recommended a 15-year sentence. [Petitioner's] strategic decision paid off: the district court applied the career offender guideline with its lower offense level and considered [Petitioner] to have a criminal history category of IV." *Hible*, 700 F.3d at 962.

The Seventh Circuit went on to reject Petitioner's argument that he preserved the issue by raising it at his plea hearing, finding that he never made the argument at his sentencing hearing, but instead chose to agree with the government that he was a career offender with a starting point of offense level 34 and that this constituted a waiver. *Hible*, 700 F.3d at 962. The court also noted that this court gave Petitioner a "final break" when it sentenced him as if he were in criminal history category IV to 240 months. *Hible*, 700 F.3d at 962.

*The Current § 2255 Motion*

Petitioner makes three arguments in his current habeas motion: (1) his defense counsel was ineffective for failing to file a motion for him to be sentenced under the FSA; (2) this court's failure to apply the FSA at sentencing with full retroactivity violates the Due Process and Equal Protection

clauses of the United States Constitution; and (3) his mandatory minimum sentence was enhanced pursuant to 21 U.S.C. § 851 without the statutory enhancement being in the indictment or found by the sentencing court beyond a reasonable doubt, in violation of the U.S. Supreme Court's decision in *Alleyne v. United States*, 133 S.Ct. 2151 (2013). In support of his motion, Petitioner cites to communications between himself and his counsel about the filing of a motion to have Petitioner sentenced under the FSA. Petitioner includes a motion that his counsel had prepared to file, arguing that the FSA should apply to Petitioner and he should be sentenced in accordance with it. Petitioner also includes a copy of his trial counsel's response to Petitioner's Illinois Attorney Registration and Disciplinary Commission (ARDC) complaint, where counsel admits that there was considerable discussion of the matter of a motion to sentence Petitioner pursuant to the FSA, and states the following:

> "However, at some later point in the proceedings, Judge McCuskey indicated that he would follow the Fair Sentencing Act as to Mr. Hible in all other respects. Likewise, I conferred with Eugene Miller, Assistant U.S. Attorney who prosecuted the case, who also assured me that Mr. Hible would be sentenced in accordance with the Fair Sentencing Act of 2010. Since I have the greatest respect for Judge McCuskey professionally and personally, I determined that the filing of this motion might offend Judge McCuskey by suggesting that the Judge would not follow the Fair Sentencing Act of 2010. Therefore, I ultimately did not file the motion."

ANALYSIS

*Ground One: Trial Counsel Was Ineffective for Failure to File a Motion to Have Petitioner Sentenced Under the FSA*

Petitioner argues that, contrary to the determination of the Seventh Circuit, he never waived the issue of an FSA reduction. Rather, he relied on his counsel's assurances that a motion would be filed eventually at sentencing, and argues that counsel was ineffective for being confused about the court's sentencing Petitioner under the FSA and for failing to preserve the FSA issue for appeal. Petitioner further argues that he was prejudiced by counsel's failure to move for him to be sentenced under the FSA because the court started with the ten-year mandatory minimum sentence as its basis. Petitioner argues that "had the court known that a sentencing range of 0 to 30 years applied (rather than 10 years to life), there is no way of telling where the court would have sentenced Petitioner within that range." The government in response argues that trial counsel was not ineffective. First, the government claims counsel's performance was not objectively unreasonable because Seventh Circuit precedent, at the time of sentencing, held that the FSA would not apply to a defendant in Petitioner's situation, *i.e.,* a defendant who committed his crimes prior to the FSA's August 3, 2010 effective date, but who would be sentenced after that date. Further, the government argues that counsel's decisions were strategic because by giving up the FSA claim, counsel obtained a substantial benefit for Petitioner of a lower career offender guideline range with an eventual below guidelines sentence of 240 months. The government argues also that Petitioner was not prejudiced by counsel's failure to raise the FSA claim, because if Petitioner had not waived the FSA claim, it would have pursued the guideline range of 360 months to life supported by the PSR's relevant conduct finding that Petitioner distributed "no less than 50 kilograms of powder cocaine, 267.5 grams of crack cocaine, and 2,000 kilograms of marijuana" and Petitioner kept weapons in his mobile home and used people to distribute drugs. Additionally, the government states it may not have dismissed counts 1 and 2 of the indictment.

The Seventh Circuit recently addressed the general legal standards governing habeas claims under the Sixth Amendment for ineffective assistance:

> "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice. *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996); *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997). The Sixth Amendment to the Constitution provides that '[i]n all criminal prosecutions, the accused shall enjoy the right... to have the Assistance of Counsel for his defence.' U.S. CONST. amend. VI. This right to assistance of counsel encompasses the right to effective assistance of counsel. *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009) (citations omitted).
>
> A party asserting ineffective assistance of counsel bears the burden of establishing two elements: (1) that his trial counsel's performance fell below objective standards for reasonably effective representation, and (2) that counsel's deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011); *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009).
>
> To satisfy the first element of the *Strickland* test, [the petitioner] must direct the court to specific acts or omissions by his counsel. *Wyatt*, 574 F.3d at 458 (citation omitted). In that context, the court considers whether in light of all the circumstances counsel's performance was outside the wide range of professionally competent assistance. *Id.* The court's assessment of counsel's performance is

9

'highly deferential [,]... indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...' See *Strickland*, 466 U.S. at 689-90, 104 S.Ct. 2052; accord *Wyatt*, 574 F.3d at 458. Further, counsel's performance is to be evaluated in light of the discretion properly accorded an attorney to develop appropriate trial strategies according to the attorney's independent judgment, given the facts of the case, at least some of which may not be reflected in the trial record. See *Strickland*, 466 U.S. at 689-90, 104 S.Ct. 2052. Courts are admonished not to become 'Monday morning quarterback[s]' in evaluating counsel's performance. *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

To satisfy the second *Strickland* element, [the petitioner] must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different, such that the proceedings were fundamentally unfair or unreliable. *Jones*, 635 F.3d at 915 (citations omitted); *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006). 'A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome.' *Adams*, 453 F.3d at 435 (citing *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052)." *Blake v. United States*, 723 F.3d 878-79 (7th Cir. 2013).

A petitioner need not prove by a preponderance of the evidence that his attorney's failure changed the outcome, but the standard is only slightly below that: a possibility that is conceivable but not substantial is not enough. *Bailey v. Lemke*, 735 F.3d 945, 950 (7th Cir. 2013).

The court agrees with the government that Petitioner was not prejudiced by counsel's failure to move for him to be sentenced under the FSA. First, the court notes, and has no reason to doubt,

that the government would have pursued the relevant conduct and proceeded to trial on the two dismissed counts if Petitioner did not waive the FSA claim. In its Commentary on the Defendant's Objection to the Presentence Report (#35, 10-CR-20015), the government stated that "[w]hile the United States supports the relevant conduct detailed in the PSR, given the advisory nature of the Guidelines, the Section 3553(a) factors, and the United States' position that a sufficient sentence can be found in the advisory career offender guideline range of 262 to 327 months, the United States does not believe resolution of the defendant's relevant conduct objection is necessary or an efficient use of judicial resources." Conceivably, an FSA motion would have pushed the guideline range down below the 262-327 month, causing the government to move to introduce the relevant conduct showing Petitioner responsible for an extensive array of drug dealing activities, which would have then subjected Petitioner to the guideline range of 360 months to life in prison.

As noted by the Seventh Circuit, Petitioner "had little to gain in arguing for application of the FSA with no mandatory minimum and a maximum sentence of 30 years when he faced an advisory guideline range of 360 months to life and his counsel recommended a 15-year sentence." *Hible*, 700 F.3d at 962. Based on his relevant conduct, Petitioner could have had a potentially higher offense level calculated under the drug quantity guideline, but Petitioner avoided such a hearing by agreeing to the career offender guideline range. As noted by the Seventh Circuit, Petitioner's strategic decision paid off: this court applied the career offender guideline with its lower offense level and considered Petitioner to have a criminal history category of IV, which was a "final break." *Hible*, 700 F.3d at 962. Had Petitioner filed the FSA motion, the government is certain it would have introduced relevant conduct, which likely would have led to a sentence higher than the one Petitioner ultimately received. Therefore, Petitioner has suffered no prejudice, as it is likely the

11

FSA filing would not just have made no difference in the outcome, but may also have led to a longer sentence. Petitioner's claim on this ground is DENIED.

*Ground Two: The Court's Failure to Apply the FSA with Full Retroactivity Violates the Due Process Clause and the Equal Protection Clause of the U.S. Constitution*

Petitioner next argues that the court's failure to apply the FSA at sentencing in July 2011 violated the Due Process and Equal Protection clauses of the U.S. Constitution. All Petitioner states in support of this claim is that "there are two cases pending before the Supreme Court in regards to retroactivity of the FSA" and that a Senate bill is awaiting a vote to make the FSA retroactive. The government responds that: (1) he waived the FSA claim in district court; (2) the FSA claim is procedurally defaulted; (3) the FSA claim is not cognizable; and (4) the failure to apply the FSA did not prejudice Petitioner.

The court agrees with the government. The Seventh Circuit has already held that Petitioner's claim that the district court should have applied the FSA at sentencing has been waived. *Hible*, 700 F.3d at 961-62. Even if the court were to find Petitioner's FSA claim not waived, not procedurally defaulted, and cognizable, Petitioner would not have suffered any prejudice for the reasons stated above. Further, Petitioner has not developed his argument in any way and has cited to no case law in support of his position. Therefore, Petitioner's claim on this ground is DENIED.

*Ground Three: Petitioner's Mandatory Minimum Sentence Was Enhanced Pursuant to 21 U.S.C. § 851 Without the Enhancement Being in the Indictment or Found by the Sentencing Court Beyond a Reasonable Doubt*

Petitioner argues that the § 851 enhancement was not included in the indictment and the elements for the enhancement were not found beyond a reasonable doubt, but rather were found by

the court by a preponderance of the evidence. Petitioner claims this is in violation of the recent U.S. Supreme Court decision in *Alleyne v. United States*, 133 S.Ct. 2151 (2013). The government argues that *Alleyne* is not retroactive and, in any event, does not apply, and that the claim is procedurally defaulted.

The court agrees with the government. In *Alleyne*, the Court held that any fact that increases the mandatory minimum sentence for a crime is an "element" of the crime, not a "sentencing factor," and it must be submitted to the jury. *Alleyne*, 1333 S.Ct. at 2155. However, Petitioner's arguments relate to his sentencing enhancement under § 851 based on his prior felony drug-trafficking conviction, and the Seventh Circuit has noted that:

> "*Alleyne*, however, did not change the rule announced in *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), that the fact of a prior conviction need not be alleged in the indictment or proven to a jury beyond a reasonable doubt. The Court explicitly stated in *Alleyne* that it was not revisiting its *Almendarez-Torres* decision because the parties had not raised it. 133 S.Ct. at 2160 n.1. Until the Supreme Court tells us otherwise, we will continue to apply *Almendarez-Torres*, and so we decline to set aside Boyce's sentence on this ground."
> *United States v. Boyce*, 742 F.3d 792, 799 (7th Cir. 2014).

Here, Petitioner's enhancement was made pursuant to § 851 based on prior convictions. The Seventh Circuit has held that *Alleyne* does not apply to a defendant in Petitioner's situation and therefore Petitioner's claim on this ground must be DENIED. See *Boyce*, 742 F.3d at 799.

CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, this court denies a certificate of appealability in this case (COA). A district court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In *Barefoot v. Estelle*, 463 U.S. 880 (1983), *superseded on other grounds by* 28 U.S.C. § 2253(c)(2), the Supreme Court set forth the methodology to be used in evaluating a request for a COA. A petitioner need not demonstrate that he should prevail on the merits, but rather must demonstrate that the issues are debatable among jurists of reason, that the court could resolve the issues in a different manner, or that the questions are adequate to deserve encouragement to proceed further. *Barefoot*, 463 U.S. at 893, n. 4. The court believes that Petitioner has not demonstrated that the issues raised are debatable among jurists of reason. The court would not resolve the issues in a different manner nor does it believe the questions are adequate to deserve encouragement to proceed further. Petitioner has not made a substantial showing of the denial of a constitutional right. A COA is DENIED in this case.

IT IS THEREFORE ORDERED:

(1) Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (#1) is DENIED.

(2) A certificate of appealability is DENIED.

(3) This case is terminated.

ENTERED this 4th day of April, 2014.

s/ MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE